UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LEVISTA, INC.

                Plaintiff,

- against-

RANBAXY PHARMACEUTICALS, INC.,

                Defendant.
----------------------------------------------------------X
FEUERSTEIN, J.

OPINION AND ORDER
09 CV 0569 (SJF)(MLO)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   FEB 04 2010   ★

2/8/10 v8
LONG ISLAND OFFICE

On February 11, 2009, plaintiff Levista, Inc. ("plaintiff") filed this action against defendant Ranbaxy Pharmaceuticals, Inc. ("defendant"), pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a), asserting claims, *inter alia*, for breach of contract. Defendant now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim. For the reasons stated herein, defendant's motion is granted.

I.    Background

    A.    Factual Allegations[1]

Plaintiff is a New York corporation with its principal place of business located at 190 East Main Street, Huntington, New York 11743. (Complaint [Compl.], ¶ 2).

Defendant is a Florida corporation with its principal place of business located at 9431 Florida Mining Boulevard East, Jacksonville, Florida 32257. (Compl., ¶ 4).

---

[1] The factual allegations are taken from the complaint and, though disputed by defendant, are accepted as true for purposes of this motion. They do not constitute findings of fact by the Court.

1

Plaintiff alleges that in or about May 2008, defendant entered into an agreement with plaintiff to sell and deliver to plaintiff twenty-five thousand eight (25,008) bottles of Cephalexin 500 mg/500s ("Cephalexin") at a price of nineteen dollars ($19.00) per bottle, less a cash discount of two percent (2%). (Compl., ¶ 9).

According to plaintiff, in June and July of 2008, defendant sold and delivered to plaintiff fourteen thousand six hundred eighteen (14,618) bottles of Cephalexin, for which plaintiff paid defendant nineteen dollars ($19.00) per bottle, less the cash discount of two percent (2%). (Compl., ¶ 10).

By letter dated December 8, 2008, plaintiff demanded that defendant ship and deliver the remaining ten thousand three hundred ninety (10,390) bottles of Cephalexin, but defendant failed to do so. (Compl., ¶ 11, Ex. B). Plaintiff alleges that instead defendant sold and delivered the Cephalexin to plaintiff's competitors, among others, at a price greater than nineteen dollars ($19.00) per bottle. (Compl., ¶ 16).

Plaintiff annexes to the complaint copies of purchase orders from plaintiff to defendant dated between May 21, 2008 and May 27, 2008, as well as copies of invoices defendant sent to plaintiff upon shipment of the Cephalexin dated July 15, 2008. (Compl., Ex. A). Plaintiff also attaches a copy of an e-mail from Tim Gustafson ("Gustafson"), defendant's national account manager, to Haresh Sanjanwala, a principal of plaintiff, dated June 16, 2008, confirming the parties' "deal, which consists of 25,000 units at $19.00/bottle of Cephalexin * * * (before cash discount of 2%)" and that plaintiff's total order "for the first part of the 25,000 bottles" was for fourteen thousand four hundred eighteen (14, 418) bottles of Cephalexin at a total cost of two hundred sixty-eight thousand four hundred sixty-three dollars and sixteen cents ($268,463.16),

after the cash discount. (Id.).

C.   Procedural History

On February 11, 2009, plaintiff commenced this action against defendant pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a), asserting claims for breach of contract (first cause of action); bad faith (second cause of action); and specific performance (third cause of action). Plaintiff seeks damages in the amount of one million dollars ($1,000,000.00); specific performance of the contract, i.e., sale and delivery of the remaining ten thousand three hundred ninety (10,390) bottles of Cephalexin to plaintiff at a price of nineteen dollars ($19.00) per bottle, less the cash discount of two percent (2%); and costs and attorney's fees.

Defendant now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim.

II.   DISCUSSION

A.   Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

3

will not do.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, ___ U.S. ___, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), cert. denied, 128 S.Ct. 2964, 171 L.Ed.2d 906 (2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, ___ U.S. ___, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint.[2]

---

[2] Accordingly, I have not considered the affidavit of Harish Sanjanwala, plaintiff's president, submitted in opposition to the motion.

4

Chambers, 282 F.3d at 152-153 (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

B. Breach of Contract Claim

To state a claim for breach of contract under New York law[3], the complaint must allege (1) the existence of an agreement; (2) that the plaintiff has adequately performed his or her obligations under the agreement; (3) that the defendant failed to perform his or her obligations thereunder; and (4) damages resulting to the plaintiff from the defendant's nonperformance. See, 24/7 Records, Inc. v. Sony Music Entertainment, Inc., 429 F.3d 39, 41-42 (2d Cir. 2005); Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004).

Defendant contends that plaintiff's purchase orders were merely offers to purchase goods by plaintiff, which had not been accepted by defendant, and, thus, the complaint fails to allege the existence of a valid agreement.

The documents upon which plaintiff relies in its complaint to establish the existence of a contract do not demonstrate the existence of a "master" contract governing the parties' relationship. Rather, those documents show that the parties' relationship is based upon purchase orders. Consequently, each purchase order issued by plaintiff and accepted by defendant "represents a distinct contractual obligation and must be analyzed separately." Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC, No. 07CV6665, 2009 WL 1803458, at * 4 (S.D.N.Y. June 23, 2009); see also Joseph v. Atlantic Basin Iron Works (Inc.), 132 N.Y.S.2d 671, 673

---

[3] The parties appear to agree that New York law applies in this case.

5

(N.Y. Sup. 1954), aff'd, 285 A.D. 1147, 143 N.Y.S.2d 601 (1st Dept. 1955) (holding that the third-party defendants' acceptance of the purchase order and performance of the work called for thereunder established the existence of a contract). Generally, the written terms of the purchase orders and the invoices indicating acceptance of the purchase orders control, although evidence of the parties' course of dealing, as well as industry custom and trade usage, may be considered by the Court to assist in its interpretation of an ambiguous contract. Atateks Foreign Trade, 2009 WL 1803458, at * 4.

By purchase order number CEP/200/07102008/260, dated May 21, 2008, plaintiff ordered three thousand six hundred sixty-eight (3668) bottles of Cephalexin at a price of nineteen dollars ($19.00) per bottle to be shipped to 7227 West Goshen Avenue, Visalia, CA 93291 by July 16, 2008.[4] (Compl., Ex. A). An invoice dated July 15, 2008 from defendant to plaintiff in the total amount of sixty-nine thousand six hundred ninety-two dollars ($69,692.00) indicates that the Cephalexin was shipped by defendant to MWI Veterinary Supply, at 7227 West Goshen Avenue, Visalia, CA 93291 on July 14, 2008. (Compl., Ex. A). The invoice indicated the following payment terms: "Advance Payment." (Id.). Since both parties fulfilled their obligations under this "contract," plaintiff cannot base its breach of contract claim upon this purchase order.

Another purchase order from plaintiff to defendant dated May 21, 2008[5] indicates that plaintiff ordered five thousand one hundred forty-two (5142) bottles of Cephalexin at a price of nineteen dollars ($19.00) per bottle to be shipped to Phoenix Pharmaceutical, Inc., located at

---

[4] Plaintiff redacted the name of the entity to whom this order was to be shipped.

[5] Plaintiff redacted the purchase order number on this purchase order. However, the invoice sent by defendant in accordance with this purchase order contains the same purchase number as the order to MWI Veterinary Supply, i.e., CEP/200/07102008/260.

1302 South 59th Street, St. Joseph, MO 64507 by July 16, 2008.[6] (Compl., Ex. A). An invoice dated July 15, 2008 from defendant to plaintiff in the total amount of ninety seven thousand six hundred ninety-eight dollars ($ 97,698.00) indicates that defendant shipped the Cephalexin in accordance with that purchase order on July 14, 2008. (Compl., Ex. A). The invoice indicates the following payment terms: "Advance Payment." (Id.). A bill of lading number AV9928, dated July 15, 2008, confirms defendant's shipment of goods to plaintiff, as consignee. (Compl., Ex. A). Since both parties fulfilled their obligations under this "contract," plaintiff cannot base its breach of contract claim upon this purchase order.

Plaintiff also submits four (4) other purchase orders it allegedly sent to defendant: purchase order numbers CEP/200/05232008/201 and 202 ("P.O. 201" and "P.O. 202," respectively), dated May 23, 2008; * * */* * */* * * *2008/241[7] ("P.O. 241"), also dated May 23, 2008; and CEP/200/05272008/242 ("P.O. 242"), dated May 27, 2008. (Compl., Ex. A). P.O. 201 requests the sale of eleven thousand eight hundred thirty-eight (11,838) bottles of Cephalexin at a total cost of two hundred twenty-four thousand nine hundred twenty-two dollars ($224,922.00) for delivery to plaintiff's warehouse by a date "[t]o be scheduled * * *." (Compl., Ex. A). P.O. 202 and 242 each request the sale of ten thousand five hundred ninety (10,590) bottles of Cephalexin at a total cost of two hundred one thousand two hundred ten dollars

---

[6] The original purchase order was updated on August 28, 2008, by purchase order number CEP/200/07102008/260A, to change the lot numbers of the Cephalexin ordered by plaintiff. (Compl., Ex. A).

[7] Although plaintiff attempted to redact this purchase order number, the last digits are legible.

($201,210.00) for delivery to plaintiff's warehouse by a date "[t]o be scheduled * * *."[8] (Compl., Ex. A). P.O. 241 requests the sale of fourteen thousand four hundred eighteen (14,418) bottles of Cephalexin at a total cost of two hundred seventy-three thousand nine hundred forty-two dollars ($273,942.00) for delivery to plaintiff's warehouse by a date "[t]o be schedule[d] * * *."[9] (Compl., Ex. A). Plaintiff does not submit invoices from defendant, or bills of lading, corresponding to any of those purchase orders. However, it is undisputed that defendant delivered the fourteen thousand four hundred eighteen (14,418) bottles of Cephalexin ordered by plaintiff pursuant to P.O. 241, which encompasses P.O. 260 and 260A.[10] (Compl., ¶ 10). Since both parties fulfilled their obligations under P.O. 241, plaintiff cannot base its breach of contract claim upon this purchase order.

Accordingly, the dispute relates only to P.O. 242, i.e., the sale of ten thousand five hundred ninety (10,590) bottles of Cephalexin.[11] Although plaintiff has submitted the purchase

---

[8] P.O. 202 and 242 are identical in all respects except that P.O. 242 is dated four (4) days later than P.O. 202 and contains the expiration dates for the lot numbers of Cephalexin ordered. Thus, it is presumed that P.O. 242 is just an amended re-order of P.O. 202 and is not a separate order.

[9] P.O. 241 and 201 are identical in all respects except that P.O. 241 includes an additional order of two thousand five hundred eighty (2580) bottles of Cephalexin and contains the expiration dates for the lot numbers of the Cephalexin ordered. Thus, it is presumed that P.O. 241 is an amended re-order of P.O. 201 and is not a separate order. In addition, P.O. 241 includes the five thousand one hundred forty-two (5,142) bottles of Cephalexin shipped to Phoenix Pharmaceuticals under P.O. 260A, as well as the three thousand six hundred sixty-eight (3,668) bottles of Cephalexin shipped to MWI Veterinary under P.O. 260.

[10] The complaint actually alleges that defendant sold and delivered to plaintiff an additional two hundred (200) bottles than contemplated under P.O. 241. (Compl., ¶ 10).

[11] Since the complaint alleges that defendant sold and delivered to plaintiff an additional two hundred (200) bottles than contemplated under P.O. 241, only ten thousand three hundred ninety (10,390) bottles are actually at issue. (Compl., ¶ 11).

order allegedly sent to defendant, it does not allege that defendant ever accepted that offer to purchase, nor does it submit a copy of an invoice sent by defendant indicating its acceptance of that order. Absent acceptance of the purchase order, there is no valid agreement.

Even assuming that plaintiff has alleged the existence of a contract, i.e., P.O. 242, and that defendant has failed to perform its obligations under that purchase order, i.e., to deliver the ten thousand three hundred ninety (10,390) bottles of Cephalexin ordered by plaintiff, plaintiff has not alleged the performance of its obligations under that contract, i.e., payment in advance of at least fifty percent (50%) of the total amount due under that purchase order. The payment terms specifically included in P.O. 242 are fifty percent (50%) "upfront" and fifty percent (50%) "on the receipt of the goods." (Compl., Ex. A). In addition, P.O. 242 indicates that wire transfer of payment will be made "before release of the order. 2% cash discount will be deducted from the payment." (Id.). The parties' past course of dealings also indicates that defendant demanded "Advance Payment" on its invoices. Although plaintiff alleges that it demanded delivery of the Cephalexin pursuant to P.O. 242, the complaint is devoid of any allegation that plaintiff tendered advance payment, or even fifty percent (50%) payment up front, prior to demanding shipment of the remaining bottles Cephalexin. Indeed, in its opposition papers, plaintiff does not allege advance payment of any portion of P.O. 242. Rather, plaintiff only alleges that plaintiff paid for the goods previously delivered by defendant pursuant to P.O. 241 and was ready to perform its obligations under P.O. 242, not that it did so. (Affirmation of Frederick P. Mose, Esq. in Opposition to Motion to Dismiss [Mose Aff.], ¶14). Accordingly, the complaint fails to state a

cause of action for breach of contract.[12]

C. Bad Faith Claim

Plaintiff admits that its second cause of action was inartfully pleaded as a "bad faith with intent to profit claim," but contends that the claim is, in essence, a claim for interference with a prospective business advantage.

Plaintiff's claim appears to be that defendant interfered with plaintiff's prospective economic relations, i.e., its sale of Cephalexin to its customers. Generally, in order to establish such a claim under New York law, "the plaintiff must show that defendant's conduct was not 'lawful' but 'more culpable,' * * * [i.e.,] the defendant's conduct must amount to a crime or an independent tort." Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 818 N.E.2d 1100 (N.Y. 2004). In other words, a defendant will not be liable for tortious interference with business relations "so long as 'the means employed are not wrongful.' * * * '"Wrongful means" include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract * * *.'" Id. at 191, 785 N.Y.S.2d 359 (quoting Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980)). An exception to that general rule is recognized "where a defendant engages in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs.'" Id. at 190, 785 N.Y.S.2d 359 (quoting NBT Bancorp., Inc. v. Fleet/Norstar Financial Group, Inc., 215

---

[12] In light of this determination, it is unnecessary to consider defendant's remaining contentions regarding dismissal of the breach of contract claims.

10

A.D.2d 990, 990, 628 N.Y.S.2d 408 (3d Dept. 1995), aff'd, 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996)). "If a defendant shows that the interference is intended, at least in part, to advance its own interests, then it was not acting solely to harm the plaintiff." Anesthesia Associates of Mount Kisco, LLP v. Northern Westchester Hospital Center, 59 A.D.3d 473, 477, 873 N.Y.S.2d 679 (2d Dept. 2009).

Plaintiff does not allege that defendant's conduct in allegedly selling the remaining bottles of Cephalexin to its competitors at a higher price was criminal or independently tortious. Defendant "did not drive [plaintiff's] customers away by physical violence, or lure them by fraud or misrepresentation, or harass them with meritless litigation." Carvel, 3 N.Y.3d at 192, 785 N.Y.S.2d 359. In addition, plaintiff alleges that defendant's motive in interfering with its relationships with its customers was "normal economic self-interest * * * [i.e.,] [to] make itself more profitable." Carvel, 3 N.Y.3d at 190, 785 N.Y.S.2d 359. Thus, defendant was not acting solely to hurt plaintiff. See, e.g. id.

Moreover, plaintiff's allegations are insufficient to demonstrate that defendant wrongfully used "economic pressure" to interfere with plaintiff's business relations. "[T]he economic pressure that must be shown is not * * * pressure on [plaintiff], but on [plaintiff's] customers." Carvel, 3 N.Y.3d at 192, 785 N.Y.S.2d 359. "[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." Id. "While economic pressure brought to bear by one contracting party on the other may, on rare occasions, be tortious * * *, it cannot constitute the tort of interference with economic relations." Id. (Citations omitted). As alleged, all defendant did was to make the Cephalexin available to plaintiff's competitors at allegedly

11

higher prices, which, as a matter of law, does not constitute interference with plaintiff's business relations. See, e.g. id. Since plaintiff does not allege any egregious conduct on the part of defendant, the complaint fails to state a claim for tortious interference with prospective business relations.

### D. Specific Performance

Even assuming plaintiff can state a valid breach of contract claim, its claim for specific performance fails to state a claim for relief. Generally, where the subject matter of a contract is not unique and has an established market value, specific performance is unavailable because monetary damages "would be adequate to protect the expectation interest of the injured party." Sokoloff v. Harriman Estates Development Corp., 96 N.Y.2d 409, 415, 729 N.Y.S.2d 425, 754 N.E.2d 184 (N.Y. 2001) (quoting Restatement [Second] of Contracts § 359[1]); see also Lucente v. International Business Machines Corp., 310 F.3d 243, 262 (2d Cir. 2002) (holding that "before the 'extraordinary' equitable remedy of specific performance may be ordered, the party seeking relief must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice.") Here, even if plaintiff were able to establish a breach of contract claim, monetary damages would be adequate to compensate it for defendant's purported breach. Accordingly, plaintiff's claim for specific performance is dismissed with prejudice.

### E. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." "If the underlying facts or circumstances relied upon


by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Absent a showing of undue delay, bad faith or dilatory motive on the part of the plaintiff, undue prejudice to the defendant, or the futility of the amendment, a plaintiff should be granted leave to replead upon granting a motion to dismiss. Id. at 182, 83 S.Ct. 227. If amendment would be futile, i.e. if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6), leave to amend may be denied. See Lucente, 310 F.3d at 258.

Since plaintiff cannot state a viable claim for tortious interference with business relations or specific performance, any amendment to the complaint to reassert those claims would be futile. However, plaintiff's application for leave to amend the complaint to reassert its breach of contract claim is granted. Plaintiff must file any amended complaint in accordance with this order **within twenty (20) days from the date of entry of this order**, or the complaint will be deemed dismissed in its entirety with prejudice.

III. Conclusion

For the reasons stated herein, defendants' motion to dismiss the complaint is granted, plaintiff's claims for tortious interference with business relations (second cause of action) and specific performance (third cause of action) are dismissed with prejudice and plaintiff's claim for breach of contract (first cause of action) is dismissed with leave to amend within twenty (20) days from the date of entry of this order. Failure of plaintiff to serve and file an amended

complaint within twenty (20) days from the date of entry of this order will result in the complaint being dismissed in its entirety with prejudice.

SO ORDERED.

/s/ Sandra J. Feuerstein
SANDRA J. FEUERSTEIN
United States District Judge

Dated: February 4, 2010
      Central Islip, N.Y.